actions connected with the same subject of action. Judge Swan, in Sturges v. Burton (8 O. S 218) lays down the following rule, which has been followed in all code states: "By the provisions of the code the plaintiff may unite in one action all causes of action arising from the same transaction, or transactions connected with the same subject of action; and this includes causes of action legal and equitable, *ex contractu* and *ex delicto*. But if the causes of action do not arise from the same transaction or transactions connected with the same subject of action, the causes of action *ex contractu* can not, in general, be united with the causes of action *ex delicto*."

The first question to be determined is, were these different causes of action included in the same transaction or transactions connected with the same subject of action.

Plaintiff claims that a part of his real property is illegally appropriated by the city for street purposes, and that thereafter the remainder of his real property is assessed for the making of this same street. There are several causes of action included in transactions connected with the same subject of action. It is true that the first cause of action sounds in tort, but I doubt whether the assessments, levied by the city upon plaintiff, which he complains are illegal, establish a contractual relation between him and the city. At the most, plaintiff has united legal and equitable causes of action in his petition, which is clearly permissible under the statute, when they are included in the same transaction, connected with the same subject of action. But even were different causes of action, one sounding in tort and the other in contract, united, if included in the same transaction, as in this case, this would be proper pleading.

Upon either proposition the demurrer must be overruled, and leave is granted defendant to plead further.

---

(Hamilton County Common Pleas, 1900.)
SARAH KILPATRICK et al. v. JOHN E. HUMPHREYS, executor.

---

In an action to contest the validity of a will, there is only one issue upon which a jury must pass, irrespective of the pleadings, namely, whether the writing produced is the last will or codicil of the testator or not. The simple allegation in the petition that it is not, tenders the issue. and all other averments are surplusage, and no answer is required.

SPIEGEL, J.,

Plaintiffs file their petition to set aside the last will and testament and codicil of Isabella Brown, deceased, alleging that the same "was not ,and is not, her last will and codicil, for that at the time of the execution of the same she was not of sound mind and memory, was under undue restraint and influence, and was fraudulently induced to make and sign the same."

Defendant files a motion that plaintiffs be

required to make their petition more definite and certain, by stating under what undue restraint and influence, and of whom, the testatrix was at the time of the execution of her will, and also when, where and by whom the testatrix was fraudulently induced to make and sign her will, and what said fraudulent inducements were.

Section 5858, Revised Statutes, provides that any person interested in a will or codicil, duly probated, may contest its validity in a civil action in the court of common pleas. Section 5861 provides that an issue shall be made up, either in the pleadings or by an order on the journal, whether the writing is the last will or codicil of the testator, or not, which shall be tried by a jury. Our supreme court has determined in Walker v. Walker, 14 O. S., 157, that it is error for the court to render final judgment on demurrer to answer; an issue must be made up and tried by a jury.

In Dew v. Reid, 52 O. S.,525, the supreme court, viewing the different acts upon this subject, and the interpretation placed upon them by said court comes to the following conclusion:

"It will be observed that the issue which section 5861 requires to be made up and tried, is identical with that prescribed by former statutes, and defined by precisely the same language, which, therefore, must receive the same construction, and be given the same operation and effect, as had been accorded to it by previous adjudications. And though actions of this nature are now denominated civil actions, yet, in so far as they are governed by special rules of pleading and procedure under the code, the latter are inapplicable, so that the issue which shall be made up and tried in such cases, having been specifically prescribed by statute, can not be varied or restricted by averments in the pleadings whether controverted or not. And while that issue may be made up either by the pleadings, or by an order entered on the journal of the court, it must, whatever the mode adopted, be the broad issue required by the statute, whether the instrument produced is the valid will of the alleged testator; and as the proof may be commensurate with the issue, any competent evidence tending to prove that, for any reason, it is not his valid will, is admissible, and should receive proper consideration by the jury."

This decision is explicit. There is only one issue upon which a jury must pass, irrespective of the pleadings, namely, whether the writing produced is the last will or codicil of the

[COPYRIGHT, 1901, BY CARL G. JAHN.]

plaintiff or not. The simple allegation in the petition that it is not, tenders the issue, and all other averments are surplusage, and no answer is required. No matter what allegations the pleader may embody in his petition, they can neither enlarge nor circumscribe the final inquiry—is it the last will or codicil of the testator? *Cessante ratione legis, cessat ipsa lex.* When the reason for a rule ceases, the rule itself ceases.

The motion must be overruled.

C. W. Baker, for plaintiff.

Maxwell & Ramsey, contra.

---

(Superior Court of Cincinnati.)
Special Term, 1901.

H. L. ASHBROOK v. NORTH FAIRMOUNT BUILDING & SAVINGS CO.

A depositor of a building Association, who is not a stock member thereof, is a creditor of the association.

JACKSON, J.,

The evidence offered on behalf of the plaintiff herein, which is undisputed, shows that the moneys paid into the Building Association by Ashbrook were paid by him and received by the company as special deposits; that Ashbrook was not a running stock member, and that he did not pay any dues upon running stock.

The different amounts paid to the company by Ashbrook must therefore be regarded as loans. Therefore, on the authority of George H. Schone et al., v. the Consolidated Building & Saving Company et al., 4 N. P., 216, plaintiff is entitled to recover herein.

Judgment for plaintiff.

Galvin & Bauer, for plaintiff.

Albert T. Brown, contra.

---

(Hamilton County, Court of. Common Pleas.)
THE STATE OF OHIO, ex rel. J. M. SHEETS, At'ty Gen'l. v. WILLIAM N. HOBART, et al.

(1.) Every boxing match or sparring exhibition for a prize fight is a crime under the laws of Ohio.

(2.) No public gymnasium or athletic club, whether it has been organized bona fide or is a sham, can exhibit a boxing match or sparring contest for a prize under any circumstances whatever.

(3.) That the contestants fight with gloves instead of bare fists, and for a limited number of rounds instead of "to a finish," is of no importance, nor do these circumstances mitigate the brutality of the contest or lessen the danger of injury to the combatants to any material extent.

(4.) All such affairs when held in public are common nuisances. They attract among others, the idle and vicious elements in society, and persons whose occupations are for the most part criminal; whose lives and conduct degrade a community. They are brutal exhibitions of physical force trained to a high degree of power and endurance; they are gladiatorial in their nature, and are under the ban of civilization. They set false standards of manly virtues and are a disgrace to the community in which they are held. They affect the fair name and honor of the state and of the place in which they are held. They make a man's place of habitation less desirable to live in, and are humiliating to him individually and as a citizen. They are degrading, and are injurious to the moral tone of the community, and tend to make it and private standards lower. Their effects are demoralizing and pernicious to the good order and well being of society. The facts in this particular case show a common public nuisance of the first magnitude.

(5.) Such contests with their attendant evils affect a man's comfort and welfare, and may even endanger his safety. They interrupt and prevent the calm enjoyment of life and the peaceful pursuit of happiness which are among every man's inalienable rights, guaranteed him by the constitution, and to secure which, with other things, governments are established among men.

(6.) A court of equity takes cognizance of these things, and when a threatened act, although a crime, is with its attendant circumstances also a public nuisance, will when the apprehended injury is irreparable, and there is for it no adequate remedy at law, prevent its execution by injunction.

(7.) The State is interested in the enjoyment of life, the happiness, the health, the comfort, the safety, the morals and the well-being of its inhabitants, and its courts are open to it, on the relation of its attorney general to prevent the infringement of these rights by any public nuisance. If the law is inadequate, or gives no remedy, the courts exercising equity jurisdiction will afford relief.

(8.) It is not essential that any property rights be involved in order that a court of equity may take cognizance of a public nuisance. The enjoyment of life, the happiness, the health, the comfort, the morals, the safety and the well-being of the inhabitants of a state are of more importance to them and to it than any property or mere money interests they or it can possibly have; and the right to these has at least the same constitutional guarantees that the right of property has.

(9.) Indirectly property rights are involved in a public nuisance which lowers the moral tone of a community, gives it a bad reputation, and consequently makes it a less desirable place to live in. Property rights are directly affected when the nuisance is of such a character that extra police must be employed to prevent breaches of the peace and to